**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SHENETTA L. BURNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-2485 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

Plaintiff Shenetta Burnett seeks disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. An Administrative Law Judge ("ALJ") found that plaintiff was not disabled, which stands as the final decision of the Commissioner of Social Security ("Commissioner"). Plaintiff contends the ALJ erred in evaluating the credibility of her subjective allegations, assessing her residual function capacity ("RFC"), and relying upon vocational expert testimony to find her not disabled. For the reasons stated below, the court remands the case for reconsideration consistent with this opinion.

**I.     Legal Standard**

The court must determine whether the Commissioner's final decision is "free from legal error and supported by substantial evidence." *Walls v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Accordingly, this court applies a two-pronged review of the ALJ's decision: (1) Are the factual findings supported by substantial evidence in the record? (2) Did the ALJ apply the correct legal standards? *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "Substantial evidence" is a term of art, meaning "more than a mere scintilla" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Astrue*, 321 F. App'x

-1-

789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). When evaluating whether the standard has been met, the court is limited; it may neither reweigh the evidence nor replace the ALJ's judgment with its own. *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (citing *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)). On the other hand, the court must examine the entire record—including any evidence that may detract from the ALJ's decision. *Jarmillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

## II. Analysis

Plaintiff is a forty-two-year-old woman with two years of college education and has engaged in past work as a warehouse worker, laser operator, machine operator, and day care worker. Plaintiff filed an application for disability insurance benefits based primarily on seizures, diabetes, mellitus, retinopathy, hypertension, asthma, chest pain (following an myocardial infarction), obesity, and memory loss. Plaintiff alleges she became disabled in August 2010.

The ALJ considered plaintiff's claim and concluded that her allegations of disabling symptoms were not credible. The ALJ also determined that plaintiff retained the RFC to perform sedentary work but had a limited ability to push and pull with the left upper extremity; could not reach with the left upper extremity; and could occasionally climb, balance, stoop, kneel, crouch, and crawl. Plaintiff was also limited to simple work at a specific vocational preparation ("SVP") level of three or less as defined in the Dictionary of Occupational Titles ("DOT"). Relying on vocational expert ("VE") testimony, the ALJ concluded that plaintiff could perform work that exists in significant numbers in the national economy, including work as a telephone solicitor, credit card processor, and room service order clerk.

### A. Plaintiff's Credibility

The ALJ considered plaintiff's own statements about her impairments, the medical evidence, her daily activities, her use of medication, and a statement from a prior employer in evaluating the credibility of her subjective allegations. (Doc. 3-1 at 26–30.) The ALJ concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (*Id.* at 30.) The ALJ based his credibility determination on the following findings:

- Plaintiff stopped working for reasons other than her medical conditions.
- The medical evidence did not support plaintiff's contention that she had a stroke.
- The ALJ considered plaintiff's purported noncompliance with medication and concluded that her medical conditions improved with treatment.
- Plaintiff underrepresented her activities of daily living.

Plaintiff claims these findings are erroneous. First, plaintiff first argues the ALJ erroneously found that she stopped working for reasons other than her medical conditions. Plaintiff worked at Last Word, Inc. ("Last Word") from 2005 until December 5, 2009, and then at MarTech beginning in June 2010. Plaintiff alleges that she had to stop working in August 2010 due to side effects from her medications. (*Id.* at 148.) In assessing plaintiff's credibility, the ALJ noted that the record contained an employer statement that plaintiff presented no problems as an employee and that plaintiff stopped working because she was "laid off due to [a] slowdown in work." (*Id.* at 30 and 169.) However, the court believes the ALJ was referring to plaintiff's *prior* former employer Last Word—not MarTech—because the employer statement came from Last Word. In fact, at the hearing, plaintiff admitted she was laid off from Last Word because the business was shutting down, but there is no evidence in the record that she stopped working for MarTech for that reason. The court believes the ALJ's credibility determination on this basis is unsupported by the record.

Second, plaintiff claims the ALJ improperly found the medical evidence did not support plaintiff's contention that she had a stroke. The ALJ found: "Although she testified she had a stroke in November 2011, the medical evidence does not support this was the problem. Rather, she had a crisis due to noncompliance with medications." (*Id.*) There appears to the court to be some sort of confusion as to the date of the alleged stroke. The ALJ referenced November 2011, but the medical records reflect plaintiff was hospitalized from November 3, 2010 to November 7, 2010 for "hypertensive urgency vs subcortical stroke" due to left side weakness/paralysis. (*Id.* at 259.) The court notes that plaintiff also was hospitalized in November 2011, which could have caused some confusion. In any event, while a medical report dated November 4, 2010 showed plaintiff's heart was normal, as were her head CTs, it was noted during this hospital stay that her diabetes mellitus, hypertension and seizure disorder were very poorly controlled, perhaps resulting in a possible stroke due to a hypertensive urgency. (*Id.* at 245.) The magnetic resonance imaging ("MRI") of plaintiff's brain on November 10, 2010 revealed "chronic small vessel ischemic disease is likely." (*Id.* at 232 and 235.) At discharge, it was recommended she use a walker, and she was walking with a "stiff" gait. (*Id.* at 278.)

The Commissioner notes that the medical records indicate plaintiff "[didn't] feel she [was] having a stroke" at the time and argues that her symptoms were likely related to high blood pressure. (Doc. 11 at 6 (citing Doc. 3-1 at 258).) However, plaintiff is not a medical professional. Whether a "stroke" or a "crisis," plaintiff experienced sudden-onset left-sided weakness, and there appears to be no inconsistency that would undermine plaintiff's credibility as to the severity of her alleged symptoms. Indeed, subsequent examinations confirmed left sided weakness (*id.* at 288), even as late as January 2011, (*id.* at 316). To the extent the ALJ made a credibility determination based on plaintiff's allegations of a "November 2011" stroke, that determination is not supported by the record.

-4-

Third, the ALJ questioned plaintiff's credibility due to her "noncompliance" with her medications. Troubling for the court is the fact that the ALJ failed to inquire about the circumstances surrounding plaintiff's purported noncompliance. *See* 20 C.F.R. §§ 404.1530(a), 416.930(a); *Burnside v. Apfel*, 223 F.3d 840, 843–44 (8th Cir. 2000) (holding that, before a claimant is denied benefits because of a failure to follow a prescribed course of treatment, an inquiry must be conducted into the circumstances surrounding the failure, and a determination must be made whether compliance would restore a claimant's ability to work or sufficiently improve the claimant's condition).

For example, the Tenth Circuit has recognized that affordability may explain a claimant's failure to seek or comply with treatment. *Swanson v. Barnhart*, 190 F. App'x 655, 657 (10th Cir. 2006); *Walker v. Callahan*, 990 F. Supp. 1283, 1287 (D. Kan. 1997) ("[T]he fact that a person may not seek medical treatment may be attributable to a lack of financial resources, and may not be an indication that the claimant's testimony regarding the extent of his disability is not credible.") (citation omitted). In this case, there is evidence in the record that plaintiff was unable to consistently take her medications due to costs. (Doc. 3-1 at 789, 794 and 796.) The ALJ should have conducted an inquiry and determined whether plaintiff's noncompliance was justified because she could not afford her medications. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); s*ee also Powell v. Shalala,* No. 93-4004-SAC, 1993 WL 500839, at *10 (D. Kan. Nov. 8, 1993) ("On remand, the Secretary should consider whether the plaintiff had a justifiable excuse (such as lack of financial resources) for not pursuing treatment.").

The ALJ also failed to consider whether plaintiff's purported noncompliance was the result of side effects of some of her medications. For example, there is evidence in the record that plaintiff was not able to take Clonidine for her hypertension due to the drowsiness it caused her. (Doc. 3-1 at 348.) The ALJ should have inquired into the circumstances concerning why plaintiff was purportedly

-5-

noncompliant with her medications and determined whether she had a justifiable excuse. *Thomas*, 987 F.2d at 1490.

Fourth, the ALJ stated that plaintiff underrepresented her activities when she reported she goes out to visit once or twice a month, but a medical record from December 2011 noted she went out to eat three times per week. (Doc. 3-1 at 30.) Plaintiff testified at the January 24, 2012 hearing that she was no longer eating out three times per week and that she was going out just once per week to a restaurant right around the corner. (*Id.* at 948.) The court agrees that plaintiff's statements in December 2011 are not entirely consistent with her testimony one month later at the hearing, even though plaintiff claims that she had changed how often she ate out by the time of the hearing. However, given the court already has determined that several of the factors on which the ALJ relied in assessing plaintiff's credibility are not supported by substantial evidence, the court cannot weigh this remaining factor in isolation. "Because a credibility assessment requires consideration of all the [pertinent] factors 'in combination,' . . . when several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, this court is precluded from weighing the remaining factors to determine whether they, by themselves, are sufficient to support the ALJ's credibility determination." *Romero v. Apfel*, No. 99-2141, 2000 WL 985853, at *4 (10th Cir. July 18, 2000) (quoting *Robinson v. Apfel*, No. 98-5073, 1999 WL 74025, at *3 (10th Cir. Feb. 17, 1999).

Accordingly, the court finds that remand for a proper credibility determination is appropriate. On remand, the ALJ may not ignore factors that weigh in favor of plaintiff's credibility. *Owen v. Chater*, 913 F. Supp. 1413, 1420 (D. Kan. 1995). For example, the ALJ should consider plaintiff's consistent work history prior to the onset of her purported disability in determining her credibility. *Id.* (finding error where ALJ selected only that evidence which was unfavorable to plaintiff and failed to consider plaintiff's long and steady work record). Indeed, the ALJ should consider all the factors set

forth in 20 C.F.R. §§ 404.1529 and 416.929,  SSR 96–7p, and *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987), and then "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

### B.  The RFC Determination

Plaintiff also claims the ALJ's RFC determination is not linked to the record evidence or supported by substantial evidence in the record.  "When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence." *Wing v. Astrue*, No. 10-1043-EFM, 2011 WL 1831755, at *2 (D. Kan. May 12, 2011); *Mosher v. Astrue*, 479 F. Supp. 2d 1196, 1205 (D. Kan. 2007) ("the ALJ 'did not connect the dots, so to speak,' between the evidence he summarized and the conclusion he reached") (quoting *Kency v. Barnhart*, No. 03-1190-MLB, slip op. at 7 (D. Kan. Nov. 16, 2004)).  In such a case, the court must remand for an explanation as to how the assessment was made. *Reed v. Colvin*, No. 13-4110-SAC, 2014 WL 4639905, at *8 (D. Kan. Sept. 16, 2014).

In the present case, the ALJ failed to cite specific medical facts to describe how the evidence supports each RFC conclusion.  In other words, while the ALJ summarized the evidence, he failed to identify what evidence led him to his RFC assessment.  The court believes remand is appropriate for a proper formulation of plaintiff's RFC based on substantial evidence in the record.  On remand, the ALJ should also take into account plaintiff's "severe" impairments of a seizure disorder and asthma in determining plaintiff's RFC.

Finally, the ALJ acknowledged there was no medical opinion evidence.  (Doc. 3-1 at 30.) Plaintiff argues that the ALJ erred by failing to obtain a medical opinion as to her functional

-7-

limitations.  While the court does not decide whether the ALJ committed reversible error in not obtaining a medical opinion, the court nonetheless believes the parties would benefit on remand by plaintiff undergoing a consultative examination to obtain a medical opinion as to her functional limitations.  Only after appropriate consideration of that medical opinion, in conjunction with the other record evidence, should the ALJ make a determination as to plaintiff's RFC and the extent to which plaintiff may (or may not) be able to perform past relevant or other work.

The court finds that plaintiff raises a substantial issue as to whether the ALJ's RFC assessment was proper.  On remand, the Commissioner is instructed to reconsider plaintiff's credibility, the medical evidence, and the RFC determination.  *Denison v. Astrue*, No. 10-1290-JWL, 2011 WL 3236071, at *9 (D. Kan. July 28, 2011) ("Plaintiff raises a substantial issue whether the ALJ's RFC assessment is proper based upon plaintiff's claims regarding credibility determination, evaluation of the medical opinions, and narrative discussion, and the Commissioner is instructed to reconsider those issues on remand.").

**IT IS THEREFORE ORDERED** that the Commissioner's decision is reversed and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) remanding this case for further proceedings consistent with this opinion.

Dated this 21st day of January, 2015, at Kansas City, Kansas.

s/ Carlos Murguia  
**CARLOS MURGUIA**  
**United States District Judge**